Higinia COSME–PÉREZ, et al., Plaintiffs,

v.

MUNICIPALITY OF JUANA DÍAZ; Ramón A. Hernández–Torres, Mrs. Hernández–Torres, and their Conjugal Partnership; Commonwealth of Puerto Rico; John Doe; Richard Doe; and their Respective Insurance Companies, Defendants.

Civil No. 07–1942 (DRD).

United States District Court, D. Puerto Rico.

Sept. 30, 2008.

Monica A. Sanchez–Rivera, Departamento de Justicia, Valerie Maldonado–Rivera, Department of Justice, Commonwealth of Puerto Rico, San Juan, PR, Charles E. Vilaro–Valderrabano, Jose Antonio Tulla Law Office, Monica A. Sanchez–Rivera, Departamento de Justicia, San Juan, PR, Johanna M. Emmanuelli–Huertas, Alvarez Law Offices, Ponce, PR, for Defendants.

Juan Ramon Rodriguez–Lopez, Rodriguez–Lopez Law Office, Ponce, PR, for Plaintiff.

## ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court are: (a) *Motion To Dismiss Pursuant To Rule 12(b)(6) Of the Federal Rules Of Civil Procedure* filed by the Commonwealth of Puerto Rico and the Hon. Ramón A. Hernández Torres ("Mayor Hernández"), in his personal and official capacity, as Mayor of the Municipality of Juana Díaz (Docket No. 8); (b) *Motion To Dismiss* filed by the Municipality of Juana Díaz ("Municipality") (Docket No. 11); and (c) plaintiffs' *Response To Motion To Dismiss* (Docket No. 17). The Court notes that plaintiffs moved for voluntary dismissal as to the Commonwealth of Puerto Rico (Docket No. 16), under Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.").

This matter was referred to the United States Magistrate Judge Vélez–Rive ("Magistrate Judge") for report and recommendation on (Docket entries No. 22 and 23).

On July 2, 2008, the Magistrate Judge's *Report and Recommendation* was entered (Docket No. 24). In the *Report and Recommendation*, the Magistrate recommended that defendants' motion to dismiss be granted in part and denied in part. The Magistrate Judge allowed the defendants ten (10) days to object to the *Report and Recommendation*, that is, until July 17, 2008. The record shows that the Municipality of Juana Díaz timely objected to the *Report and Recommendation* (Docket No. 25), as well as Mayor Hernández' request to join the objections filed by the Municipality (Docket No. 26). The Court notes that plaintiffs did not object to the *Report and Recommendation*. For the reasons set forth below, the *Report and Recommendation* issued by the Magistrate Judge is adopted *in toto, albeit* on alternate grounds, as to the standard of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

### Factual Background

Plaintiff Higinia Cosme–Pérez ("Cosme") was sixty-nine years old at the time the instant complaint was filed on October 4, 2007. *See* Complaint, Docket No. 1, ¶ 11. Cosme worked with the Municipality's Head Start Program from September 12, 2003 through January 12, 2007, as a full time employee.[1] During the year 2006, Cosme's health was "suffering incapacitating health condition that required medical treatment including surgery." *See* Complaint, Docket No. 1, ¶ 12. Cosme was on medical leave from August 10, 2006 until January 12, 2007. *See* Complaint, Docket No. 1, ¶ 12. During this time, Cosme alleges that she was constantly harassed and discriminated against by Mayor Hernández, and other personnel, in the "presence of third parties." *See* Complaint, Docket No. 1, ¶ 13. Cosme claims that this situation moved her to request a sick leave without pay. Instead, she was

---

**1.** The Court notes that plaintiff was hired at around age 64–65 for ADEA claim purposes.

transferred from Coamo to Juana Díaz, only to find that another person was "doing her assigned duties." *See* Complaint, Docket No. 1, ¶ 15. Cosme felt "forced to resign" and requested leave of one-year without pay upon tendering her resignation. *See* Complaint, Docket No. 1, ¶ 16. Mayor Hernández met with Cosme on January 10, 2007, and the Mayor "told plaintiff not to worry that he already told Carlitos (Carlos Colón, defendant's special aid) and told her to see Carlitos." *See* Complaint, Docket No. 1, ¶ 16. Subsequently, "Plaintiff went to Carlos Colón's office where he told her that the Mayor has explained her request and he will [sic] take care of the approval of the one-year leave without pay." *See* Complaint, Docket No. 1, ¶ 16. However, "the one-year leave without pay was never granted." *See* Complaint, Docket No. 1, ¶ 16.

Cosme resigned on January 12, 2007, only two (2) days after her meetings with Mayor Hernández and with Carlos Colón. *See* Complaint, Docket No. 1, ¶ 11. Cosme filed a complaint with the United States Equal Employment Commission ("EEOC") on April 9, 2007, and the Notice of Right to Sue was issued on July 9, 2007. *See* Complaint, Docket No. 1, ¶ 19. The instant action ensued on October 4, 2007.

### Standard of Review

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Civil Rule 72(a) of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ. R."). *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Fed.R.Civ.P. 72(b) and L.Civ.R. 72(d).

Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

(Emphasis ours).

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). *See also Sands v. Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an

argument never raised"). *See also United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

The Court, in order to accept the unopposed report and recommendation, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. See *Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir. 1996) (en banc) (extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982) (en banc) (appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001) ("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding Fed.R.Civ.P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) ("when no objections are filed, the district court need only review the record for plain error").

The standard for an objected report and recommendation is *de novo* review as to those issues that are properly objected. *Borden v. Secretary of H.H.S.,* 836 F.2d at 6.

Hence, the Court will review *de novo* the specific objections of the Municipality and Mayor Hernández in his official and personal capacities, and will review the Magistrate Judge's findings pertaining to plaintiffs, under the plain error standard, as the *Report and Recommendation* stands unopposed by plaintiffs. Thus, the Court, in order to accept the unopposed *Report and Recommendation,* needs only satisfy itself by ascertaining that there is no "plain

error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996) (en banc) (extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. 1982) (en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R. 2001) ("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding Fed.R.Civ.P 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa. 1990) ("when no objections are filed, the district court need only review the record for plain error").

The objections filed by the Municipality and joined by Mayor Hernández are: (a) the Magistrate Judge's use of an incorrect motion to dismiss standard under Rule 12(b)(6), as the standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) has been abrogated by *Bell Atlantic Corporation, et al. v. Twombly, et al.,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007); and (b) all causes of actions are time barred, as the complaint has "significant factual gaps" which are necessary to determine the timeliness of the EEOC charge.

For the reasons set forth below, the Court finds no "plain error" as to the findings pertaining to plaintiffs. The Magistrate Judge's recommendations are: (a) based upon the notice of voluntary dismissal filed by plaintiffs, all claims against the Commonwealth of Puerto Rico shall be dismissed with prejudice; (b) the dismissal request filed by Mayor Hernández, as to the claims under ADA, ADEA and Title

VII, in his personal capacity, should be granted; (c) the dismissal request as to the claims under 42 U.S.C. § 1983 and pendent state claims, against Mayor Hernández in his official capacity shall be denied; and (d) the Municipality's dismissal request should be denied. *See Report and Recommendation* (Docket No. 24 at page 14). The Court agrees with the Magistrate Judge's recommendation, *albeit* on other grounds. The Court briefly explains.

### Applicable Law and Discussion

### *The motion to dismiss standard under Fed.R.Civ.R. 12(b)(6)*

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides that a complaint will be dismissed for "failure to state a claim upon which relief can be granted." "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (Citations omitted). *Bell Atlantic Corporation, et al. v. Twombly, et al.,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In *Twombly,* 127 S.Ct. at 1965 and 1974, the Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... (citations omitted) ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions not do, *see Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). **Factual allegations must be enough to raise a right to relief above the speculative level,** *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004).

. . .

Here, in contrast, we do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not nudged their claims across the line from **conceivable to plausible,** their complaint must be dismissed. (Emphasis ours).

*See also Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("Specific facts are not necessary; the **statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests'**") (quoting *Twombly,* 127 S.Ct. at 1964) (emphasis ours); *Thomas v. Rhode Island,* 542 F.3d 944, 948 n. 4 (1st Cir. 2008) (the motion to dismiss standard followed in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) "no longer governs in light of *Twombly*" (quoting *Twombly,* 127 S.Ct. at 1964); *Rodríguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007) (citing *Twombly*); and *Torres v. Bella Vista Hospital, Inc.,* 523 F.Supp.2d 123, 133 (D.P.R. 2007) (quoting *Twombly,* 127 S.Ct. at 1974). Thus, the new standard under *Twombly* is that a claim for relief must contain legal allegations that "are plausible on its face."

■ A district court's dismissal of a claim under Fed.R.Civ.P. 12(b)(6) is reviewed *de novo* by the Court of Appeals. *Thomas v. Rhode Island,* 542 F.3d 944 (1st Cir.2008). "In doing so, we must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable

inferences therefrom." *Thomas,* 542 F.3d at 948 (citing *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir.2008)).

Based on the above premises, the Court finds that paragraphs number ("¶") 11, 12, 13, 14, 15, 16, 19 of the Complaint meet the *Twombly* test, as the statements provide notice to defendants "enough to raise a right to relief above the speculative level, … and the grounds upon which it rests," *Twombly,* 127 S.Ct. at 1965. Moreover, the facts as pled in the complaint are "plausible" as opposed to "conceivable," as plaintiff stated in the Complaint a claim upon which a relief can be granted. The Court finds that the Complaint provides sufficient information as to plaintiffs' role as an employee of the Municipality's Head Start Program; her employee history with Mayor Hernández since the year 2006, until her "forced" resignation on January 12, 2007 due to the alleged misrepresentations made by Mayor Hernández to plaintiff among other alleged "discriminatory incidents." [2]

---

**2.** For easy reference, the Court includes ¶¶ 11 through 16 and 19 of the Complaint:

"11. Plaintiff Higinia Cosme–Pérez is sixty night (69) years old. Plaintiff Higinia Cosme–Pérez was an employee of co-defendant Municipality of Juana Díaz under the Head Start Program as food specialist/cook. She began to work with co-defendant Municipality of Juana Díaz since September 12, 2003 until January 12, 2007. Plaintiff's work evaluations and personnel record reflected an excellent and hard working employee. She worked over eight (8) hours daily, over five (5) days per week, most of the overtime was never paid.

12. A during 2006 plaintiff Higinia Cosme–Pérez was suffering a temporally incapacitating health condition that required medical treatment including surgery. Anytime that plaintiff had to be absent she produced medical certificate and notify in advanced in accordance with regulation. Plaintiff was in medical leave from August 10, 2006 to January 12, 2007.

13. Co-defendant Ramón Hernández–Torres several time addressed plaintiff Higinia Cosme–Pérez telling her "voy a llamar al seguro social para que investiguen ya que tú estás recibiendo los beneficios y eso es fraude" (I will call the Social Security Administration and ask for a fraud investigation because you are receiving benefits). Co-defendant Hernández–Torres made this statement directly to plaintiff Higinia Cosme–Pérez. The also made the statement to plaintiff children. Co-defendant Hernández–Torres made the statement in the presence of third parties.

14. Many time defendant Hernández–Torres told plaintiff: "ya tu estás bastante mayor" (You are too old). Defendant Hernández– Torres constantly and publicly made the statement: "yo lo que necesito es gente joven …" (I need young people …). Co-defendant Hernández–Torres meant that he will hired young people as Municipality of Juana Díaz employees and replace the old ones.

15. Due to constant harassment, discrimination, and threat plaintiff decided to [sic] sick leave without pay. She requested the leave to Mrs. Eva Cintrón (Director of Personnel) and to Mrs. Elsa Martínez (Food Supervisor and Plaintiff's Supervisor). Mrs. Martínez recommended plaintiff to resign because her children were grown-up. She was transferred from Coamo to Juana Díaz but when she reported to Juana Díaz there was someone else doing her assigned duties.

16. Plaintiff Higinia Cosme–Pérez felt forced to resign due to the constant harassment, discrimination and threat. She made clear her intentions and requested one-year leave without paid when she represented her resignation. She was summons to defendant Hernández–Torres offices on January 10, 2007. He asked her why she wants to resign. Plaintiff answered him that she asked for one-year leave without pay was not approved by the Municipality of Juana Díaz, Office of Personnel. Defendant Hernández–Torres told plaintiff not to worry that he already told Carlitos (Carlos Colón, defendant's special aid) and told her to see Carlitos. Plaintiff went to Carlos Colón's office where he told her that the Mayor has explained her request and he will take care of the approval of the one year leave without pay. The one-year leave without pay was never granted.

19. Plaintiff filed a complaint in the U.S. Equal Employment Opportunity Commission (EEOC) on April 9, 2007. Notice of Right to Sue was issued on July 9, 2007."

### A colorable action under
### 42 U.S.C. § 1983

Section 1983 of the Civil Rights Act provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceedings for redress....[3]

■ It is well settled that a state or an arm of a state is not a covered "person" under 42 U.S.C. § 1983. *See Will v. Michigan Department of State Police, et al.,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Likewise, "a suit against a state official *in his or her official capacity* is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself." (Citations omitted). (Emphasis ours). *Will v. Michigan,* 491 U.S. at 71, 109 S.Ct. 2304. *See also Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, when plaintiff seeks a **declaratory or injunctive relief** or any other **equitable** remedy under federal law, the courts have found federal jurisdiction in an action against the state or a state official in his official capacity, as opposed to personal capacity. *Mills v. State of Maine,* 118 F.3d 37, 54 (1st Cir. 1997). In *Mills,* 118 F.3d at 54, citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Court held:

Since our decision in *Ex Parte Young,* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ], we often have found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to "end a continuing violation of federal law" (internal citation omitted) (quoting *Green v. Mansour,* 474 U.S. 64, 68 [106 S.Ct. 423, 88 L.Ed.2d 371] (1985)). **The *Ex Parte Young* doctrine does not apply in cases where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity.** *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102–103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). (Emphasis ours).

■ In *Pennhurst,* 465 U.S. at 102–103, 104 S.Ct. 900, the Court held:

The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. This was the holding in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. **This Court held that the Eleventh Amendment did not prohibit issuance of this injunction.** The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the

---

**3.** All claims against officials in their personal capacity and/or entities that are not an arm of

the State, cannot be dismissed since they are the subject covered under a § 1983 claim.

United States." *Id.*, at 160, 28 S.Ct., at 454. **Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his official conduct."** *Ibid.*

While the rule permitting suits alleging conduct contrary to "the supreme authority of the United States" has survived, the theory of *Young* has not been provided an expansive interpretation. Thus, in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. *Id.*, at 666–667 [94 S.Ct., at 1357–1358]. **In particular, *Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief.** Under the theory of *Young*, such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief was barred by the Eleventh Amendment. (Emphasis ours).

In the instant case, plaintiff is seeking strictly monetary relief from under 42 U.S.C. § 1983, for past violations, but no equitable remedy or injunctive relief has been detected by the Court (Docket entries No. 1 and 17).

However, there is a question of a § 1983 action against Mayor Hernández in his official and personal capacity, as well as to the liability of the Municipality of Juana Díaz. It is settled that Mayor Hernández is not a state official, for the Mayor is not an employee of the Commonwealth of Puerto Rico, but an employee of the Municipality of Juana Díaz. The municipalities of Puerto Rico are not covered under the umbrella of the Eleventh Amendment, as they are not an arm of the state, and as stated before Mayor Hernández, suffers the same result as not being protected by the Eleventh Amendment, as the municipalities. *Will v. Michigan Dept. of State Police*, 491 U.S. at 71, 109 S.Ct. 2304. The Court briefly explains.

### The Mayor, the Municipality and the § 1983 Action

■ The Puerto Rico Act of Autonomous Municipalities, Title 21, section 4001(u) of the Laws of Puerto Rico Annotated (hereinafter "L.P.R.A."), 21 L.P.R.A. § 4001(u), provides that: *"Municipality* shall mean a geographic demarcation with all its wards, which has a specific name and is governed by a local government composed of a Legislative Power and an Executive Power." 21 L.P.R.A. § 4001(v) further provides that: *"Autonomous municipality* shall mean the municipality that achieves the greatest fiscal stability in compliance with the requirement of keeping a balanced budget, and which has an approved and updated Classification and Retribution Plan; a Territorial Distribution Plan, an Expansion Area and Zoning Plans with the corresponding delegations; and its accounting up to date and a consistently managed automated accounting system."

A municipality in Puerto Rico is considered a political subdivision for purposes of the Eleventh Amendment. *Sanchez–Lopez, et al. v. Fuentes Pujols, et al.*, 247 F.Supp.2d 37, 42 (D.P.R.2002). "While these [municipalities] may receive part of its budget from the state, 'such entities do not automatically (or even usually) come within the zone protection demarcated by the Eleventh Amendment' " (citations omitted). *Sanchez–Lopez*, 247 F.Supp.2d at 42, citing *Hess v. Port Authority*

*Trans–Hudson Corp.*, 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (**"cities and counties do not enjoy Eleventh Amendment immunity"**). *See also Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico And The Caribbean Cardiovascular Center Corp.*, 322 F.3d 56, 61 (1st Cir.2003) ("Political subdivisions [as are the municipalities] are not entitled to Eleventh Amendment immunity"). Hence, the Municipality is not covered under the umbrella of the Eleventh Amendment, and remains subject to federal liability.

A review of the Complaint shows enough "to state a claim to relief that is plausible on its face" (quoting from *Twombly* ) against Mayor Hernández in his official capacity. *See* Complaint, Docket No. 1, ¶¶ 13, 14, 16, and 18. Hence, the Court finds that there is a colorable action under § 1983 against Mayor Hernández in his official capacity, as well as against the Municipality, and none of the claims are covered by the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. at 71, 109 S.Ct. 2304 (the official capacity officer is on the same ship as the government entity, in this case the Municipality is not immune and the Mayor either).

### *No Personal Liability Under ADA, ADEA and Title VII*

■ The Court finds that there is no personal cause of action against Mayor Hernández under ADEA, ADA and Title VII. The Court agrees that the majority of the circuits that have addressed the issue of individual liability and have determined no personal liability of supervisors or agents of the employer.

Furthermore, most courts have held there is no federal cause of action against natural persons under Title VII, and other federal similarly protective discrimination causes. As this district has previously explained:

■ Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII. *See Serapion v. Martinez*, 119 F.3d 982 (1st Cir.1997) (declining to address the issue of individual liability); *but see Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998) (citing *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995), where no individual liability under Title VII was found); *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (no individual liability under Title VII); *Wathen v. General Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir.1997) (same); *Haynes v. Williams*, 88 F.3d 898 (10th Cir.1996) (same); *Dici v. Com. of Pa.*, 91 F.3d 542 (3rd Cir.1996) (same); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir.1995) (same); *Gary v. Long*, 313 U.S.App. D.C. 403, 59 F.3d 1391 (D.C.Cir.1995) (same); *Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377 (8th Cir.1995) (same); *Smith v. Lomax*, 45 F.3d 402 (11th Cir. 1995) (same); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.1994) (same); *Miller v. Maxwell's International, Inc.*, 991 F.2d 583 (9th Cir.1993) (same); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir.2003) ("under Title VII individual supervisors are not subject to liability"). Like the majority of the circuit courts, this District has generally held that individual defendants are not liable under Title VII. *See Canabal v. Aramark Corp.*, 48 F.Supp.2d 94, 95–98 (D.P.R.1999) (Pieras, J.); *Acevedo Vargas v. Colon*, 2 F.Supp.2d 203, 206 (D.P.R.1998); *Pineda v. Almacenes Pitusa, Inc.*, 982 F.Supp. 88, 92–93 (D.Puerto Rico 1997); *Hernandez v. Wangen*, 938 F.Supp. 1052 (D.Puerto Rico

1996); *Anonymous v. Legal Services Corporation*, 932 F.Supp. 49, 50–51 (D.Puerto Rico 1996).

The Court is compelled by the reasoning of previous decisions within this District. Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employer. *Padilla Cintron v. Rossello Gonzalez*, 247 F.Supp.2d 48 (D.P.R.2003). *See generally* the well developed and persuasive analysis of District Judge Laffitte in *Flamand v. American International Group, Inc.*, 876 F.Supp. 356, 361–64 (D.P.R.1994). *See also Sanchez Ramos v. Puerto Rico Police Department, et al.*, 392 F.Supp.2d 167, 179, n. 6 (D.P.R.2005).

In *Del Pilar Salgado v. Abbott Laboratories*, 520 F.Supp.2d 279 (D.P.R.2007), this Court held:

> Basically the definition of employer was intended for the employer not to allege that the liability belonged to the employee causing the discrimination thereby liberating the employer from liability. Furthermore, not only is the employee not covered in the definition, the definition excludes small corporations in terms of number of employees (less than 15 employees); yet would ironically include individual employees. Further, there is absolutely no legislative history to include individual employees as employers. Finally, to include an individual employee vs. an individual, congress would need to find a Constitutional reason to justify Congressional Constitutional authority to justify a law authorizing employee vs. employee liability under *United States v. Lopez*, 514 U.S. 549, 552–568, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). There is absolutely nothing in the law justifying the employee vs. employee discrimination

claim and if there is none, the Court should not invade legislative authority.(The last analysis was provided by this Court).

A § 1983 claim is a claim of civil rights based on a violation to the United States Constitution or an underlying violation of a federal statute. Since there is no violation of a federal claim under ADEA, ADA and Title VII, as to Mayor Hernández in his personal capacity, therefore, there is equally also no claim under § 1983.

### *All Causes of Actions are Time Barred v. Constructive Discharge*

A review of ¶ 12 of the Complaint (Docket No. 1) shows that Cosme was on medical leave from August 10, 2006 to January 12, 2007. Plaintiff asked for sick leave without pay instead she was transferred from Coamo to Juana Díaz, but when she reported to work in Juana Díaz someone else was "doing her assigned duties." *See* Complaint, Docket No. 1, ¶ 15. This fact triggered Cosme's "forced" resignation. *See* Complaint, Docket No. 1, ¶ 16. Thereafter, Cosme was "summoned" by Mayor Hernández on January 10, 2007 to inquire about her resignation. When Cosme explained that her request for one year leave without pay was not approved by the Office of Personnel of the Municipality, the Mayor's reaction was that "he will take care of the approval of the one-year leave without pay." *See* Complaint, Docket No. 1, ¶ 16. However, "the one-year leave without pay was never granted." *See* Complaint, Docket No. 1, ¶ 16.

Based upon the above factual allegations stated in the Complaint, taken as true, it is plausible to infer that Cosme requested the one year leave without pay on January 10, 2007, but was "never granted." Hence, Cosme's constructive discharge became effective on January 12, 2007. *See* Complaint, Docket No. 1, ¶¶ 11 and 16, as she allegedly worked with the Municipality's

Head Start Program from "September 12, 2003 until January 12, 2007." *See* Complaint, Docket No. 1, ¶ 11. The facts, as stated in the Complaint, also show that Cosme filed a complaint with the EEOC on April 9, 2007, that is, within the statutory period of 180 days, and the Notice of Right to Sue Letter was issued by the EEOC on July 9, 2007. *See* Complaint, Docket No. 1, ¶ 19. The record of the Court shows that the instant complaint was filed on October 4, 2007. Hence, the instant action, considering the facts proffered in the complaint, is not time barred, as it was timely filed, that is, within 90 days from the issuance of the EEOC Notice of Right to Sue Letter. Further, substantially, the one year statutory claim for a civil rights violation under § 1983 using an analogous state claim is one year. *See Ruiz–Sulsona v. University of Puerto Rico,* 334 F.3d 157, 160 (1st Cir.2003); *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 41–41 (1st Cir.1990); *Rivera Sanchez v. Autoridad de Energia Electrica,* 360 F.Supp.2d 302, 307 (D.P.R.2005).

In the instant case, the claim is obviously not barred based on the date plaintiff was officially informed that her one year leave due to medical incapacity was denied, that is, on or about January 10, 2007. *See* Complaint, Docket No. 1, ¶¶ 15 and 16. *Ruiz–Sulsona v. University of Puerto Rico,* 334 F.3d at 160 ("The most analogous statute of limitations period of a § 1983 claim is the one for personal injury actions, which in Puerto Rico is one year"). The instant action ensued on October 4, 2007.

### Conclusion

For the reasons stated above, this Court finds that there is **no plain error** in the Magistrate Judge's *Report and Recommendation* (Docket No. 24), hence, the *Report and Recommendation* is hereby adopted *in toto,* as to plaintiffs. The Court has reviewed *de novo* the objections raised by defendants, Municipality and Mayor Hernández. For the reasons set forth above, the objections are denied, as the claims against Mayor Hernández in his personal capacity under ADA, ADEA and Title VII are dismissed, for the claims are not covered under the Eleventh Amendment; the claims under 42 U.S.C. § 1983 against Mayor Hernández and pendent state claims in his official capacity are also denied, as the Municipality nor the Mayor are covered under the umbrella of the Eleventh Amendment; the action against the Municipality under § 1983 stands, as the Municipality is not covered under the Eleventh Amendment. The Magistrate Judge's recommendations are adopted *in toto* (Docket No. 24), *albeit* on alternate grounds.

IT IS SO ORDERED.